**EMPRESA LINEAS MARITIMAS ARGENTINAS, S.A., Plaintiff–Appellant,**

v.

**SCHICHAU–UNTERWESER, A.G., and Stork–Werkspoor Diesel, B.V., Defendants–Appellees.**

No. 91–3221.

United States Court of Appeals, Fifth Circuit.

March 12, 1992.

Robert B. Acomb, Jr., Grady S. Hurley, Jones, Walker, Waechter, Poitevent, Carrere & Dehegre, New Orleans, La., Donald Burke, Cardillo & Corbett, Robert A. Milana, Kirlin, Campbell & Keating, Richard H. Brown, Jr., Mary L. O'Connor, New York City, for Empresa Lineas Maritimas Argentinas, S.A.

Harold Lee Schwab, Lester, Schwab, Kate & Dwyer, New York City, Thomas J. Wyllie, Joel L. Borrello, Adams & Reese, New Orleans, La., Robert B. Pohl, Burlingham, Underwood & Lord, New York City, for Stork–Werkspoor Diesel, B.V.

Before REAVLEY, HIGGINBOTHAM and DEMOSS, Circuit Judges.

REAVLEY, Circuit Judge:

The M/V ELMA TRES sank off Bermuda on November 26, 1981, taking 23 crewmen and $17 million in cargo with her. The vessel was bound for United States ports, carrying merchandise for American interests. All cargo claims having been settled, the remaining parties dispute the proper forum for trying the third-party product liability action of Empresa Lineas Maritimas Argentina (ELMA), the vessel's Argentinian time-charterer, against Stork–Werkspoor Diesel, B.V. (SWD), the Dutch manufacturer of the auxiliary diesel engines used to supply electrical power onboard the vessel. The district court granted SWD's motion to dismiss on the basis of *forum non conveniens*, and ELMA appealed. We affirm.

## I. BACKGROUND

In 1981 and 1982, the American cargo interests (collectively "cargo") joined suit against Joachim Drescher (Drescher), the German shipowner, in New York federal court. Drescher responded by filing a complaint in New York under the Limitation of Liability Act, forcing cargo to consolidate their claims in the limitation action. Cargo also sued ELMA in the consolidated action. In 1984, cargo brought product liability claims against the German ship builder, Schichau–Unterweser, A.G. (SUAG), and against SWD. The court consolidated these claims with the ELMA claims for discovery purposes. SUAG was not subject to personal jurisdiction in New York, and never appeared. Discovery commenced in the consolidated action in 1984. Drescher eventually was dismissed from the action.

In 1985, SWD filed motions to dismiss cargo's claims for lack of personal jurisdiction and *forum non conveniens.* The court denied these motions, honoring the American cargo plaintiffs' forum choice. Substantial discovery followed. Then, in February 1988 after ELMA commenced its third-party product liability suit against SWD, SWD filed another motion to dismiss on grounds of lack of jurisdiction and *forum non conveniens.* By this time, ELMA had settled with cargo, leaving cargo with claims against SWD for the remaining losses. The court reserved its ruling on the 1988 jurisdictional motion, but denied the *forum non conveniens* motion because of the advanced stage of development of the case. The court doubted its jurisdiction over SWD, but nevertheless set a trial date. But the court subsequently transferred the case to the Louisiana federal court, without ELMA's opposition, because of SWD's presence in that state.

In August 1990, after settling the remaining claims of cargo, SWD filed its third *forum non conveniens* motion in New Orleans, claiming that the Netherlands was a more convenient trial location. ELMA and SWD were the only remaining parties. In February 1991 the district court dismissed the case on *forum non conveniens* grounds. This appeal followed.

## II. DISCUSSION

We review the district court's decision-making process and conclusion to determine if the district court acted reasonably. *Nolan v. Boeing Co.,* 919 F.2d 1058, 1068 (5th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991). Our review follows the analysis set out in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) and applied in *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1165–66 (5th Cir.1987).

■ ELMA raises a procedural argument, that the district court did not uniformly require SWD to shoulder the burden on its motion. ELMA notes that this court once before required a defendant to bring "unequivocal, substantiated evidence presented by affidavit testimony" in order to carry its burden. *Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1550 n. 14 (5th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991). The district court did not require SWD to make an affidavit showing on certain issues raised in the motion, including the existence of any SWD indemnity claim against SUAG; the existence of documents in SUAG's possession that were required for SWD's defense; whether SWD's former employees are unwilling to testify in the United States; whether current SWD employees are unwilling to testify in the United States; whether SWD has assets only in the Netherlands; and whether suit in the Netherlands would administratively burden the Dutch court or delay the trial.

As to the showing that a defendant must make to carry its burden against a plaintiff who has chosen a foreign forum, the Supreme Court in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), rejected the contention "that defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." *Id.* at 258, 102 S.Ct. at 267. The Court concluded that "[s]uch detail is not necessary." Rather, defendants "must provide enough information to enable the District Court to balance the parties' interests." *Id.* And *Baris* commented that a defendant need not present "a detailed development of the entire case," and that " 'the necessary detail [required by defendants] will depend upon the particular facts of each case.' " 932 F.2d at 1550 n. 14 (quoting *Air Crash,* 821 F.2d at 1165 n. 28).

■ We do not think that the *Baris* affidavit requirement extends to all elements of defendant's burden in every case. *Baris* involved an American plaintiff, and therefore the defendant was obligated to make a stronger showing of inconvenience than is SWD. *Piper,* 454 U.S. at 255, 102 S.Ct. at 266. And *Baris* discussed the affidavit requirement in the context of determining

forum availability and adequacy in a case where these essential threshold requirements were not established. *Id.* at 1549–50. Further, the imposition of a blanket rule requiring affidavit evidence as to the kinds of matters ELMA raises would invite protracted discovery in every case, and would tend to inflict an impossible burden on defendants who are seeking dismissal for the very reason that they cannot compel evidence, including the evidence necessary to argue for dismissal. *See Piper,* 454 U.S. at 258, 102 S.Ct. at 267 (purpose of *forum non conveniens* doctrine defeated by requiring extensive evidence that lies beyond compulsory process). We think that SWD, under the particular facts of this case, has met its burden of supplying "enough information to enable the District Court to balance the parties' interests." *Id.*

## A. AVAILABILITY AND ADEQUACY OF THE NETHERLANDS FORUM

■ This court previously has found the Dutch courts available and adequate for the resolution of maritime disputes. *Belcher Co. of Alabama, Inc. v. M/V MARATHA MARINER,* 724 F.2d 1161, 1165–66 (5th Cir.1984); *Veba–Chemie A.G. v. M/V GETAFIX,* 711 F.2d 1243, 1245 (5th Cir. 1983). But ELMA argues that the Dutch forum is inadequate in this case because the extent of merits activity already completed by ELMA in anticipation of trial in the United States makes dismissal unfair. ELMA further argues that the Dutch forum is inadequate because the different "judicial culture" of the Dutch courts will prejudice ELMA's ability to present its case in the Netherlands, in part because depositions of key witnesses, including the sole survivor of the sinking, are not admissible.

■ SWD and SUAG both are amenable to process in the Netherlands, and Dutch law permits ELMA to litigate against SWD the type of claims that are the subject matter of this dispute. The district court specifically concluded that Dutch courts will hear maritime disputes between foreign parties arising from accidents on the high seas, and will recognize claims for damages in tort against a product manufacturer. Consequently, the court reasoned, the Netherlands affords an adequate forum for adjudicating ELMA's and SWD's third-party claims. We cannot say that the district court's conclusion was unreasonable. There exist in this case "at least two forums in which all defendants are amendable to process." *Air Crash,* 821 F.2d at 1164. And the alternate forum is adequate if differences in that forum's laws would not deprive the plaintiff of all remedies or result in unfair treatment. *Id.* at 1165. Absent unfairness, differences in the law of the alternate forum are not a substantial factor to consider. *Piper,* 454 U.S. at 254–55, 102 S.Ct. at 265.

■ ELMA urges that Dutch rules prohibiting admissibility of foreign depositions prejudice ELMA's ability to put on its case in the Netherlands. But ELMA does not attack the substance of SWD's rebuttal, that Dutch law does *not* render the critical depositions actually inadmissible, but rather makes their admissibility at trial subject to the judge's discretion. Further, while ELMA contends that Dutch courts are unable to compel the live testimony of certain German witnesses at trial, ELMA's Reply Brief cites no authority in support of that contention despite SWD's rebuttal. In light of the fact that ELMA's key German witnesses were deposed *de bene esse,* and the uncontested averment that the Dutch court has discretion to permit ELMA to introduce those depositions at trial, we reject ELMA's argument that the Dutch forum is unfair for the reason that ELMA will be unable to present its case. And we think that the "judicial culture" differences in truth are differences in substantive and procedural law that, while affecting ELMA's rights, do not deprive ELMA of redress for its alleged injury or cause unfairness.

■ Relying on *Lony v. E.I. Du Pont de Nemours & Co.,* 935 F.2d 604 (3d Cir.1991) (*Lony II*), ELMA argues that *forum non conveniens* dismissals are inappropriate in cases where substantial discovery has taken place. *Lony II* specifically holds that

"whenever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against dismissal ... greatly increases." *Id.* at 614. But the district court here specifically considered and rejected ELMA's argument that the advanced status of this case weighs against dismissal. The court observed that, while the cargo suit was filed eight years before, ELMA did not file its third-party claim until 1988. The court concluded that "[w]hile much work has been done on this case, ... this one factor does not outweigh ... factors which call for dismissal." And SWD attacks the notion that this case is "trial-ready" with the fact that SWD has been unable to develop its fault-shifting defense against SUAG. We do not think that the district court was unreasonable in weighing as it did the stage of development in this case.

### B. DEFERENCE DUE ELMA'S FORUM CHOICE

■ While district courts ordinarily should respect an American plaintiff's forum choice, a foreign plaintiff's choice of an American forum merits less deference. *Piper,* 454 U.S. at 255, 102 S.Ct. at 266. ELMA did not choose the United States forum, but rather was haled into court here by the American cargo. ELMA claims, therefore, that it is entitled to the same deference owing to an American plaintiff, which deference requires that SWD prove that the balance of all relevant factors strongly favors dismissal. *See In re Oil Spill by AMOCO CADIZ etc.,* 491 F.Supp. 170, 177 (N.D.Ill.1979), *aff'd,* 699 F.2d 909 (7th Cir.1983) (limitation plaintiff's choice of foreign forum balanced by fact that limitation action is defensive).

The district court did not set out the degree of deference that it accorded ELMA's forum choice, nor did it find that the relevant factors favor dismissal strongly. ELMA also contends that the trial court's failure to render any analysis of the degree of deference owing ELMA's forum choice is *prima facie* abuse of discretion.

■ Convenience is the ultimate consideration for a district court in balancing private interest factors, including the forum choice of the plaintiff. When a plaintiff chooses a foreign forum for its claims, courts are reluctant to assume that convenience motivated that choice. *Piper,* 454 U.S. at 255–56, 102 S.Ct. at 266. In this case, ELMA has sued SWD in a foreign forum. Of course, ELMA initially was required to defend in New York because of Drescher's limitation action. However, when ELMA filed this suit against SWD, all of the American cargo plaintiffs had settled their claims against ELMA, Drescher had been dismissed, and SUAG had yet to be joined. Unlike the plaintiff in *Oil Spill,* ELMA had no legal interest left in the United States forum, other than the right to assert its claims. Therefore, ELMA had a choice to file in either the Netherlands or the United States. Consequently, the district court could reasonably find that ELMA's forum choice merits less deference than that of a domestic plaintiff, particularly where ELMA had some burden to show that it chose the United States forum for the sake of convenience and not merely to obtain the benefit of favorable law. *Piper,* 454 U.S. at 249 & n. 15, 102 S.Ct. at 262 & n. 15. Given the district court's conclusion that private interest factors weigh against dismissal, we cannot say that the district court unreasonably failed to give special deference to ELMA's forum choice.

■ In *Lony v. E.I. Du Pont de Nemours & Co.,* 886 F.2d 628 (3d Cir.1989) (*Lony I*) the Third Circuit opined that a district court *must* indicate the amount of deference accorded a plaintiff's forum choice. *Id.* at 634. *Lony I* followed Third Circuit precedent in imposing this mandate. *See, e.g. Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 45 (3d Cir.1988). But our cases have not required such specificity from the district courts. Nor do we think that the district court abused its discretion in failing to make a particular finding about the degree of deference it accorded ELMA's forum choice. The district court's order recited the analytical framework for consid-

ering SWD's motion, as set forth in *Air Crash,* and the court specifically noted that ELMA was a foreign party. While the district court should have supplied more explanation, we cannot say that the court failed to consider ELMA's status or abused its discretion in declining to make the desired finding. *See Piper,* 454 U.S. at 257, 102 S.Ct. at 266 (giving substantial deference to district court's decision that "considered all relevant public and private interest factors" and balanced them reasonably).

## C. OTHER PRIVATE INTEREST FACTORS

### 1. *Availability of Impleader.*

The district court considered SWD's inability to implead SUAG in the United States to be the most important factor warranting dismissal, and the court gratuitously opined that this factor alone would justify dismissal. ELMA argues that the trial court erred in making that consideration because SWD has no right of indemnity against SUAG for defects in its own engines. Alternatively, ELMA contends that the trial court erred because the doctrine of *Leger v. Drilling Well Control, Inc.,* 592 F.2d 1246 (5th Cir.1979), protects SWD from having to pay more than its actual percentage of fault, which in turn renders SUAG's contribution unnecessary.

We cannot say that the district court acted unreasonably in finding that SWD's defense would be prejudiced if ELMA won judgment in the United States and SWD subsequently had to seek indemnity or contribution against SUAG in a foreign forum that is not bound to honor that judgment. The district court was entitled to consider SWD's inability to implead SUAG as a private interest factor. *Piper,* 454 U.S. at 259, 102 S.Ct. at 267; *Nolan,* 919 F.2d at 1069. We reject ELMA's assertion that SWD has no potential claims against SUAG. ELMA itself originally brought similar third-party claims against SUAG. And even under the *Leger* doctrine, assuming it applies, SWD could not effectively defend by faulting SUAG in the United States forum, according to the dis-

trict court's findings. SWD cannot look to the district court to compel the discovery SWD needs to present evidence of SUAG's fault. We do not think that SWD has waived discovery as to that issue. And SWD still would risk exposure to the inconvenience and unfairness of inconsistent judgments in the event the district court assigned to SWD greater liability than did the Dutch court which may disregard the United States judgment. *See Piper,* 454 U.S. at 243, 260, 102 S.Ct. at 259, 268 (district court reasonably found that defendant's recourse to subsequent indemnity or contribution action in foreign forum creates risk of inconsistent judgments).

### 2. *Access to Proof Sources.*

SWD argued, and the district court concluded that trial in the United States would impair SWD's defense based on SUAG's fault because important SUAG documents relating to the construction of the ELMA TRES are located at SUAG headquarters in Germany, and SUAG has consented to jurisdiction only in the Netherlands. ELMA does not aver that trial in the Netherlands will interfere with ELMA's access to documents important to ELMA for the trial of this case. In light of the district court's reasonable conclusion that SWD had a legitimate potential defense based on SUAG's fault, we think that the district court's balancing of this factor also was reasonable.

### 3. *Access to Witnesses.*

ELMA also argues that the trial court gave inadequate consideration to the convenience associated with producing witnesses for trial in the competing fora. ELMA does not say that the trial court misidentified any witnesses or their residence, but rather that the court ignored ELMA's problems or weighed factors incorrectly. While the district court gave terse consideration to these factors, we cannot say that the court's conclusion was unreasonable.

SWD has six expert witnesses in the United States and at least four experts in the Netherlands. ELMA has two experts in Europe and six in the United States. So,

in regard to expert witnesses, ELMA and SWD are equally inconvenienced by trial in the Netherlands, while SWD faces greater inconvenience if the case is tried in the United States. ELMA argues that it selected expert witnesses based on their English-speaking ability because it anticipated trial in the United States. But SWD did also, and we are unable to conclude that the language ability of expert witnesses creates more inconvenience for one party than for the other. We cannot fault the district court's overall conclusion that the factor of access to expert witnesses favors dismissal.

SWD has approximately six fact witnesses in Holland, four of whom are not under SWD's control. Of those four, two were not deposed *de bene esse*. None are subject to process of the United States court. ELMA has key witnesses in Germany, whom ELMA contends are not subject to process in the Netherlands and who also are not subject to process in the United States. However, some of these witnesses are employees of SUAG, which has agreed to cooperate with ELMA and to submit to jurisdiction in the Netherlands. Further, ELMA's crucial foreign fact witnesses were deposed *de bene esse* with those depositions possibly admissible at trial in the Netherlands subject to the Dutch court's discretion. Basically, ELMA can try much of its case by deposition in the United States, but its right to do so in the Netherlands may be limited. SWD prefers calling live witnesses for trial, and would be substantially inconvenienced by trial in the United States.

Relative to the issues in the case, trial in the United States puts SWD's presentation of its defense at risk primarily for lack of compulsory process over one former employee involved in the design of the ELMA TRES' main engines, one former employee responsible for the guaranty work associated with installation of the auxiliary engines on board the ELMA TRES, and two non-employee engineers familiar with the functioning of SWD's auxiliary engines. By comparison, trial in the Netherlands puts ELMA's presentation of its claims at risk primarily for lack of compulsory process over the sole survivor of the ELMA TRES' sinking, and two Germanischer Lloyds officials involved in classification of the vessel. But the sole survivor and one Lloyds official were deposed *de bene esse*, so their depositions may be admissible at trial in the Netherlands. We think that the district court reasonably concluded that the location of fact witnesses favors dismissal.

*4. Judgment Enforceability.*

ELMA argues that the district court erred in weighing ELMA's alleged inability to enforce a United States judgment in the Netherlands, when ELMA can enforce such a judgment against SWD's assets in the United States. ELMA points out that the district court merely assumed that SWD's assets were located solely in the Netherlands, and that SWD failed to meet its burden of producing affidavit evidence of the location of its assets to establish that a judgment in ELMA's favor could be enforced only in the Netherlands, and not in the United States or some other country that harbors SWD assets and enforces United States judgments.

The district court's conclusion that ELMA "would have to proceed on ... [a] judgment in the Netherlands" did not rest upon any explicit finding regarding ELMA's ability to enforce judgment on SWD assets located elsewhere. ELMA and SWD agree that the record does not establish the location of SWD's assets. Since the burden fell on SWD to establish that the judgment-enforceability factor favored dismissal, we believe that the district court was unreasonable in weighing this factor in favor of SWD. We think that the district court should have found this factor to be in equipoise between the parties.

Considering all of the relevant factors, including the district court's inability to reach SUAG documents or compel the attendance of witnesses relevant to SWD's fault-sharing defense, the access to proof sources, and the relative inconvenience associated with producing witnesses for trial, we cannot say that the district court concluded unreasonably that the private interest factors favor dismissal. While the dis-

trict court gave substantial weight to SWD's ability to join SUAG in the Netherlands, the court's opinion does not indicate that the court impermissibly gave conclusive weight to that, or any other, single factor. Without approving the extent of analysis conducted by the district court, we are unable to say that the district court's conclusion regarding the private interest factors was unreasonable, relative to the convenience of the alternative fora for the parties' presentation of their respective claims and defenses.

### D. PUBLIC INTEREST FACTORS

Given the availability of an adequate forum in the Netherlands and the balance of private interest factors favoring dismissal, the district court had no need to consider the public interest factors. *See Air Crash*, 821 F.2d at 1165 (mandating consideration of public interest factors *if* private interests do not favor dismissal). But the district court did consider public interest factors, and we think that the court did not err in weighing these factors in favor of dismissal.

In most respects, this is a "not at all unusual ... case ..., involving a foreign plaintiff and foreign defendants, a foreign vessel with foreign owners, ... and a possible foreign court ... that has been held adequate to protect the ... [plaintiff's] interest...." *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 179 (5th Cir.1990). The Louisiana forum has little if any interest in this matter. And trial of the case, even to the bench, will further congest the district court's docket. Without waiving its contention regarding the applicability of United States law, ELMA conceded at oral argument that under the factors set forth in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), German law probably will apply to ELMA's third-party claims. We think that, absent a more substantial nexus with the domestic forum, public interest factors in cases such as this one weigh in favor of *forum non conveniens* dismissal.

AFFIRMED.