NEO SACK, LTD.

v.

VINMAR IMPEX, INC.

Civ. A. No. H–92–269.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 19, 1993.

Robert M. Clark, Brill, Sinex & Stephenson, Dallas, TX, for plaintiff.

J. James Cooper, Sewell & Riggs, Houston, TX, for defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

## I. BACKGROUND.

This case arises out of a commercial transaction between the plaintiff, Neo Sack, Ltd. ("Neo Sack") and the defendant, Vinmar Impex, Inc. ("Vinmar"). Neo Sack is an Indian corporation with its principal place of business in Indore, India, and Vinmar is a Texas corporation with its principal place of business in Houston, Texas. The dispute centers around an indent, a commercial document used in India that is similar to a purchase order, signed by Neo Sack and Vinmar Chemie Pvt. Ltd. ("Chemie"), an Indian corporation with its principal place of business in Bombay, India. The indent, which is on Chemie letterhead, names Vinmar as seller and Neo Sack as buyer of 100 metric tons of high density polyethylene moulding ("HDP") at $775.00 per metric ton to be shipped by sea from Europe to Bombay/Nhava Sheva, India. Neo Sack contends that Chemie was acting as agent for Vinmar and that the indent is a contract binding Vinmar to sell the HDP to Neo Sack. Vinmar contends that the indent was not an offer to sell the HDP, but was a solicitation of an offer, and that Chemie was not authorized to bind Vinmar. Neo Sack's amended complaint contains two counts, one for breach of contract and the other for violation of the Texas Deceptive Trade Practices Act. Neo Sack seeks damages of $24,740.00 for the difference in price between the HDP under the indent and the HDP purchased in substitution, $35,859.96 for additional charges and expenses, and $100,000.00 for lost profits for the inability to perform a contract with the Cement Corporation of India.

Vinmar has moved this Court to dismiss Neo Sack's claims on *forum non conveniens* grounds. Both parties have supported their position on this matter with deposition testimony, affidavits, and documents produced during discovery. In addition, at the oral hearing on the motion, defendant introduced testimony of an attorney licensed in both India and Texas. In an affidavit submitted with the motion, Vinmar agreed to submit to the jurisdiction of the courts of India and to waive any statute of limitations defenses that may have arisen after the instant action was filed. In a post-hearing submission, Vinmar further stipulated that if the case were dismissed: (i) it would post a letter of credit or bond in the United States, in an amount to be agreed upon by the parties or specified by the Court, payable to Neo Sack upon the entry of a final judgment of an Indian court; (ii) it would be bound by all discovery conducted in this case in a subsequent proceeding in India; (iii) it would waive any statute of limitations or jurisdictional defenses applicable to Neo Sack in a

subsequent proceeding in India; (iv) it would exercise its best efforts to expedite discovery and a trial setting in an Indian court, including waiving the initial service requirements under Indian law; and (v) it would agree to a conditional dismissal of this case subject to Vinmar's fulfillment of its stipulation. The Court has considered the evidence, the briefing of the parties, and counsel's argument at the hearing.

## II. ANALYSIS.

 The doctrine of *forum non conveniens* rests upon a court's inherent power to control the parties and cases before it and to prevent its process from becoming an instrument of abuse or injustice. *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1153–54 (5th Cir.1987) ("Air Crash Disaster"), *vacated on other grounds sub nom. Pam American Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). Through this power, a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, where it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 261, 102 S.Ct. 252, 268, 70 L.Ed.2d 419 (1981); *Koster v. Lumbermens Mutual Cas. Co.,* 330 U.S. 518, 530–31, 67 S.Ct. 828, 835, 91 L.Ed. 1067 (1947); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947); *Air Crash Disaster,* 821 F.2d at 1154.

 In *Gilbert,* the Supreme Court established a balancing test whereby lower courts must weigh a variety of public interest and private interest factors in determining a motion to transfer or dismiss under the doctrine of *forum non conveniens. See Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843. In *Air Crash Disaster,* the Fifth Circuit confirmed the criteria established in *Gilbert* and set forth a three-prong test:
(1) Is there an available and adequate alternative forum;
(2) If so, do the relevant factors of private interest mandate dismissal; and
(3) Do the relevant factors of public interest mandate dismissal.

*Air Crash Disaster,* 821 F.2d at 1165–66. *Accord Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138, 1145–46 (5th Cir.), *cert. denied,* 493 U.S. 918, 110 S.Ct. 279, 107 L.Ed.2d 259 (1989). The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice. *Koster,* 330 U.S. at 527, 67 S.Ct. at 833. The defendant bears the burden of invoking the doctrine and persuading the court that the outcome of the *forum non conveniens* analysis favors dismissal. *Air Crash Disaster,* 821 F.2d at 1164. This Court finds that Vinmar has met its burden.

### A. *Existence of Alternative Forum.*

 For a *forum non conveniens* dismissal to be appropriate, an available and adequate foreign forum must exist. A foreign forum is available when the entire case and all the parties can come within the jurisdiction of that forum. *Id.* at 1165; *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 830 (5th Cir. 1986). A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. *Air Crash Disaster,* 821 F.2d at 1165 (citing *Piper,* 454 U.S. at 255, 102 S.Ct. at 265–66); *Syndicate 420,* 796 F.2d at 829.

### 1. Availability of Remedy.

Based on the affidavits and testimony presented by the Indian attorneys, it is apparent that a remedy is available to Neo Sack in India. India's legal system, inherited from the British, is similar to other common law systems. *In re Union Carbide Corp. Gas Plant Disaster at Bhopal,* 634 F.Supp. 842, 847 (S.D.N.Y.1986) ("Gas Plant Disaster"), *aff'd as modified,* 809 F.2d 195 (2d Cir.1987). It compares favorably to that of the United States in terms of the appellate structure, the rule of *stare decisis,* and the role of the judiciary "as guardian of India's democratic structure and protector of citizens' rights." *Id.* India has a codified law of agency and a Sale

of Goods Act, copies of which were provided by the parties. In his affidavit, Indian lawyer Shreekant Raghunath Ghanekar explained that India also has a codified law of contracts, which includes a section dealing with measure of damages. He concluded that a remedy existed in India for the instant dispute. Accordingly, India's legal system appears to be well-equipped to deal with a routine commercial dispute of the type presented by this case.

■ Any concerns about lack of jurisdiction over Vinmar are eliminated by Vinmar's consent to jurisdiction in the courts of India and waiver of any jurisdictional defenses. *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 392 n. 12 (5th Cir.1983). In India, a remedy would also be available against Vinmar's alleged agent, Chemie, where, unlike in the United States, jurisdiction could be obtained over it. Moreover, under the terms of the indent, both Neo Sack and Vinmar agree that "[a]ll matters arising out of this Indent shall be subject to Bombay jurisdiction." [1] Such a forum selection clause creates a strong presumption favoring venue in the agreed upon forum. *See Carnival Cruise Lines, Inc. v. Shute,* —— U.S. ——, ——, 111 S.Ct. 1522, 1525, 113 L.Ed.2d 622 (1991); *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, ——, 32 L.Ed.2d 513 (1972). While this clause might be construed as a permissive, rather than a mandatory, forum selection clause, it still provides a clear indication of the parties' expectations and is entitled to consideration in a *forum non conveniens* analysis. *See Royal Bed & Spring Co. v. Famossul Industria,* 906 F.2d 45, 51–53 (1st Cir.1990).

■ Neo Sack contends that this Court should accord substantial deference to its selection of this forum. However, a foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home

forum. *Piper,* 454 U.S. at 255–56, 102 S.Ct. at 266; *Air Crash Disaster,* 821 F.2d at 1164; *Gas Plant Disaster,* 809 F.2d at 202–03; *Jeha v. Arabian Am. Oil Co.,* 751 F.Supp. 122, 127 (S.D.Tex.1990), *aff'd,* 936 F.2d 569 (5th Cir.1991). When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, the assumption is much less reasonable and courts are reluctant to assume that convenience motivated that choice. *See Piper,* 454 U.S. at 255–56, 102 S.Ct. at 266; *Empresa Lineas Maritimas Argentinas v. Schichau–Unterwester,* 955 F.2d 368, 373 (5th Cir.1992).

While this Court accords some deference to plaintiff's choice of this forum, it finds that other private and public interest factors greatly outweigh this choice in view of Neo Sack's status as a citizen of India, the tenuous relationship of the underlying dispute with this forum, and the parties' agreement to be subject to the jurisdiction of the Bombay courts. Giving effect to the agreed upon forum selection clause would more adequately fulfill the reasonable expectations of the parties and foster a favorable climate for international trade. *See Royal Bed,* 906 F.2d at 53.

### 2. Adequacy of Remedy.

The remedy afforded by the courts of India also appears to be adequate. In fact, the remedy available to plaintiff may be greater in India due to the lack of jurisdictional obstacles to bringing suit against Chemie as well as Vinmar. Neo Sack's concerns about the enforceability of any judgment are allayed both by the presence of the assets of Chemie in India and Vinmar's stipulation that it will post a bond or letter of credit in the United States sufficient to cover the judgment. In any event, Neo Sack could enforce any judgment it obtained against Vinmar in the United States under the Uniform Enforcement of

---

**1.** In his affidavit, Shri Shantilal Jain opines that under Indian law, the Bombay Court does not have jurisdiction in the matter of the contract between the parties. However, he sets forth no facts upon which to ground this conclusion. The affidavit also conflicts with the oral testimony of Uma Mantravadi, who expressed the

opinion that based upon the factors determining jurisdiction and venue under Indian law, the Bombay court would have jurisdiction. Because Chemie is based there, Vinmar does business there, and the HDP was to be delivered there, Bombay appears to be an appropriate, if not a mandatory, forum.

Foreign Judgments Act. *See* Tex.Civ.Prac. & Rem.Code Ann. § 35.003 (Vernon 1981). Moreover, because Indian law applies to this case whether tried in this forum or abroad, Neo Sack is not prejudiced by the Indian courts applying Indian law to resolve this dispute.

■ Neo Sack asserts, however, based on the affidavit of Mr. Jain, that there are significant delays in the Indian court system, particularly in the courts of Indore. According to the testimony of Ms. Mantravadi, the delay experienced in the courts of Bombay, which would appear to have jurisdiction in this matter, is substantially less, not unlike that experienced in the courts of Texas. Any delay also will be alleviated in part by Vinmar's stipulation that it will waive the initial service requirements under Indian procedural law and will exercise its best efforts to expedite discovery and a trial setting. While this case currently has a trial setting of March 1, 1993, it does not appear to be close to being ready for trial, as only limited discovery has been conducted. If it were to be retained in this forum, this Court would look favorably upon a motion for a continuance because full discovery and pre-trial briefing would be essential before presenting to a Texas jury a dispute about the enforceability under Indian law of an unfamiliar type of commercial instrument. Therefore, while the parties might experience more delay in India, this Court cannot conclude that an Indian forum would not provide an adequate remedy. *See Gas Plant Disaster,* 634 F.Supp. at 848. Even Mr. Jain does not contend that an Indian forum is inadequate, just that a "speedier result" could be obtained in Houston and the filing fees would be less.

Moreover, the fact that discovery may be more limited in India or that jury trial is not available does not render Neo Sack's remedy in India inadequate. *Gas Plant Disaster,* 809 F.2d at 206, 634 F.Supp. at 851. Likewise, the imposition of a 10% filing fee under the Indian Stamp Duty Act, does not make India an inadequate forum. *See Gas Plant Disaster,* 634 F.Supp. at 849; *Nai–Chao v. Boeing Co.,* 555 F.Supp. 9, 16 (N.D.Cal.1982), *aff'd,* 708 F.2d 1406 (9th Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983). It is likely that the extra costs incurred in filing suit in India will be more than offset by the substantial savings to Neo Sack of litigating the matter in India, eliminating the need for experts on Indian law and the costly and time-consuming travel of Neo Sack's employees and other witnesses to Texas. The Supreme Court has recognized that an unfavorable change in the law occasioned by adjudication in a foreign forum generally is not a relevant factor in the forum analysis. *Piper,* 454 U.S. at 250, 102 S.Ct. at 263; *Gas Plant Disaster,* 634 F.Supp. at 846. Moreover, the comparative amount of recovery obtainable in the alternative forums has never been considered a factor relevant to the *forum non conveniens* inquiry. *Pain v. United Technologies Corp.,* 637 F.2d 775, 794 (D.C.Cir. 1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). It is only when the change in law results in no remedy at all or in unfair treatment to the plaintiff may the alternative forum be deemed inadequate. *Piper,* 454 U.S. at 254, 102 S.Ct. at 265; *Empresa,* 955 F.2d at 372; *Gas Plant Disaster,* 634 F.Supp. at 846. In any event, it would be the height of presumption to insist on the "parochial concept that all disputes must be resolved under our laws and in our courts" and that anything short of American justice is inadequate. *See Ionescu v. E.F. Hutton Co. (France) S.A.,* 465 F.Supp. 139, 146 (S.D.N.Y.1979). The United States is not required "to be courthouse or law maker for the world." *Vaz Borralho,* 696 F.2d at 390.

B. *Private Interests of the Litigants.*

■ In *Gilbert,* the Supreme Court set forth certain considerations relating to the interests of the litigants and the public that are to be weighed in making a *forum non conveniens* determination. The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appro-

priate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843; *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

### 1. Access to Proof.

The ease of access to proof factor weighs strongly in favor of Vinmar's position that this action should be tried in India. The entities that negotiated the indent, Neo Sack and Chemie, are Indian business entities with principal places of business in India. In negotiating the indent, Neo Sack had no communication with Vinmar, either in the United States or in India. Instead, all negotiations took place in India between Neo Sack and Chemie. To the extent that a contract was breached, it was breached in India, as the indent provides that the goods were to be shipped from Europe to Bombay, India.

Aside from Vinmar's two principals, virtually all the fact witnesses to the underlying transactions reside in India. Of the nine witnesses identified in Neo Sack's responses to interrogatories, seven reside in India; the other two are principals of Vinmar. Of the eighteen witnesses identified in Vinmar's answers to interrogatories, all but five reside in India. Of the six total witnesses in the United States, only two, Vinmar's principals, reside in Texas; the others are located in California and New York.

Neo Sack claims that it incurred lost profits damages because, as a result of Vinmar's failure to deliver the HDP, Neo Sack was unable to perform a contract it had with another Indian company, the Cement Corporation of India. To support or defend against that claim, the parties will require testimony and documents from representatives of that Indian company. Similarly, Pushpa Impex, the indenting agent on one of Neo Sack's purported cover purchases, is an Indian entity from which evidence will need to be obtained. The parties also will require testimony from experts who are familiar with Indian law, Indian commercial practices, and the price and availability in India of HDP for cover purchases to support or to defend against Neo Sack's contract formation, lost profits, and cover damages claims. These witnesses will of necessity come from India. Expert witnesses on Indian law and custom could be eliminated altogether if the case were tried in India.

Neo Sack's counsel has recognized the difficulties inherent in obtaining evidence from Indian residents. Neo Sack's attorneys have written several letters and submitted court filings referencing problems that have arisen from their client's presence in India, including delays necessitated by obtaining visas and making travel plans, communications difficulties, and slow transit time. Although counsel for both parties agreed to take the deposition of Neo Sack's corporate representative at a time when he was in the United States on other business, it is unlikely that the need for trial and deposition testimony from other witnesses and experts could be so conveniently arranged.

Moreover, assuming the Indian witnesses could be brought to Texas for trial, it is likely that language barriers would prevent an expeditious trial of this lawsuit in Texas. *See Fassi v. LJN Toys, Ltd.,* 753 F.Supp. 486, 489 (S.D.N.Y.1990), *aff'd,* 948 F.2d 1276 (2d Cir.1991); *Gas Plant Disaster,* 634 F.Supp. at 858–59. The native tongue of Sunil Trivedi, Neo Sack's corporate representative, is Gujrati. While Mr. Trivedi's deposition was taken in English, his counsel initially suggested an interpreter, and he testified that his understanding of English was only fairly good from Indian standards. Many of the other witnesses residing in India, including third party witnesses, may have little or no command of the English language, requiring the services of interpreters. Even if a witness spoke English well enough to be understood by fellow Indians, a heavy accent might be extremely difficult for a Texas jury to comprehend and to get a clear grasp on the nuances of the witness' testimony.

As with the witnesses, many of the documents relevant to this action are located in India. Because Vinmar had no direct deal-

ings in the transaction, it created no documents or files. Instead, most of the documents relating to the underlying transaction were created and are maintained in India by either Neo Sack or Chemie. Similarly, documents relating to Neo Sack's contract with the Cement Corporation of India—the basis of Neo Sack's claim for lost profits—presumably are maintained in India. Problems with access to documents have already arisen. Mr. Trivedi was unable to bring from India all the documents responsive to the subpoena duces tecum served with his deposition notice. He stated in deposition that it was not possible for him to carry all the records because he needed a rack to handle the documents. In addition, Mr. Trivedi testified that the government of India had seized certain of the relevant documents, purportedly for auditing purposes, and he was unsure of when they would be returned.

Furthermore, while the documents supplied to this Court in connection with the underlying transaction are in English, it cannot be presumed that all relevant documents, including those of third parties, are in English rather than in Gujrati, Hindi, or other Indian languages. *See Gas Plant Disaster*, 634 F.Supp. at 858. These documents would have to be translated for use in this forum, whereas all documents should be useable, as is, in India. In addition, although the basic documents may be in English, they contain unusual syntax and peculiar wording. For example, one of the key provisions of the terms and conditions attached to the indent states: "All orders are subject to acceptable by Sellers and/or Manufacturers." This awkward use of the English language would further compound the confusion of a Texas jury faced with making factual findings about a foreign transaction, based upon an unfamiliar type of commercial document, governed by Indian law.

■ Although some of the witnesses and documents relating to the proof of Neo Sack's case are located in the United States, this factor alone is insufficient to require that the action be litigated in Texas. *See Vaz Borralho*, 696 F.2d at 387–89.

*See also Michell v. General Motors Corp.*, 439 F.Supp. 24, 28 (N.D.Ohio 1977); *Dahl v. United Technologies Corp.*, 472 F.Supp. 696, 700 (D.Del.1979), *aff'd*, 632 F.2d 1027 (3d Cir.1980). Because most of the witnesses and documents will come from India, it would be more convenient for these witnesses and less costly for the parties to litigate this matter in India, rather than in Texas.

### 2. Attendance of Witnesses.

Due to the fact that many of the potential witnesses and documents are located in India, cost considerations dictate that trial in India would be far more expedient. Transportation of the witnesses willing to testify in Texas would be expensive and time-consuming. Vinmar estimated that the cost of transportation and lodging each witness would run approximately $3,000.00 per person; this cost includes $2,000.00 per person for a non-refundable airline ticket. If a separate trip were required for deposition, the cost would double. Because Neo Sack did not dispute the accuracy of these figures, this Court presumes them to be correct.

Unwilling witnesses present even more of an obstacle. The parties cannot subpoena foreign citizens, such as former Chemie employees, representatives of the Cement Corporation of India, or representatives of the State Bank of Indore, India, for testimony before this Court. India is not a signatory to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Conventions") March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 codified at 28 U.S.C. § 1781 note. *See* Martindale–Hubbell, *International Law Digest*, at p. IC–15 (1992). Therefore, the parties are powerless to compel discovery or testimony from non-parties about crucial facts needed to support their claims or defenses on agency, contract formation, breach, and damages issues.

The parties face similar burdens in obtaining documents from non-parties in India, such as the Cement Corporation of India and the State Bank of Indore. Neo Sack officials have been unable to produce

otherwise discoverable documents that have been seized by Indian government authorities. Because India is not a signato-· ry to the Hague Evidence Conventions, the parties have no way of obtaining the needed documents in the absence of voluntary production, which likewise is to no avail if the documents are in the possession of the Indian government.

3. Practical Problems at Trial.

Practical considerations support dismissal of the action. Because Indian law applies to this dispute, a trial in Texas would present major difficulties to counsel and to the Court. Although much of Indian law is codified, it is likely that case law will have to be consulted to ascertain how certain statutes are construed. In order to craft an appropriate jury charge, access to Indian court decisions would be essential for this Court. The relevant case law might be contained in the All-India Reports, British common law, or other sources that are not included in the library of the Southern District of Texas. *See Gas Plant Disaster*, 634 F.Supp. at 849. These sources, no doubt, also are not readily available ·to counsel. The courts· have recognized that problems inherently arise when a court is forced to apply a law with which it is unfamiliar. *Pain*, 637 F.2d at 793 n. 101. It would be far more practical to try this case in the courts of India, which are much better equipped to deal with questions arising under Indian commerical law.

■ Neo Sack raises concerns about the timeliness of the motion to dismiss, pointing out that suit was filed on January 28, 1992, and Vinmar's answer was served on February 20, 1992. Vinmar contends that it filed the motion reasonably soon after it became manifestly supportable based on Mr. Trivedi's deposition, which was taken on June 4, 1992, when it learned that Neo Sack never dealt directly with Vinmar, that its only dealings with respect to the transaction had been with Chemie in India, and that discoverable Neo Sack documents had been seized by the Indian government. During late spring and early summer of 1992, each party responded to one set of written discovery and the Neo

Sack representative was deposed. Subsequently, little activity took place in the case, except for the production of some documents which had been delayed in arriving from India and the deposition of Vinmar's representative in November, until this motion was filed on December 10, 1992. Neo Sack estimated that it had incurred approximately $14,400.00 in attorneys' fees and costs to date.

Of course, the discovery completed will be useful to the parties, whether the case is tried in Texas or in India. The knowledge and documents acquired through discovery will not go to waste just because the forum changes. · *See Lacey v. Cessna Aircraft Co.*, 785 F.Supp. 1201, 1202–04 (W.D.Pa. 1992). The delay from July through November 1992 did not prejudice Neo Sack in any significant way, as it was not required to invest a great deal of time or money in the case during that period. The fees incurred to date likely will be offset by the savings in transportation costs and expert witness fees afforded by an Indian forum. Moreover, the length of the delay and the amount of discovery taken in this case pales in comparison to that of other cases dismissed on *forum non conveniens* grounds. For example, in *Empresa*, 955 F.2d at 373, the action had been pending eight years, the movants had been parties for three years, and much work had been done on the case prior to dismissal. In *Ionescu*, 465 F.Supp. at 140–41, 147, the court granted defendant's motion to dismiss over two years after suit had been filed, during which time extensive discovery had been conducted. The court in *Lacey*, 785 F.Supp. at 1204, permitted discovery to proceed, but invited the· defendants to refile their motions to dismiss at the close of discovery, when the facts would be better developed for a *forum non conveniens* determination.

Neo Sack has not been greatly inconvenienced. Mr. Trivedi's deposition was arranged to correspond with a time he was planning to be in the United States on other business. If the case were tried here, he would have to appear again in Texas to be deposed about the documents

he was unable to bring with him on the prior occasion. The discovery and other litigation efforts taken to date constitute only a small part of the efforts that should be undertaken to prepare this case for trial, including depositions of Indian experts and those non-party witnesses who will appear voluntarily. Furthermore, if this case proceeded in Texas, the parties would be required to brief the Court on the substance and construction of Indian law and provide expert witnesses on Indian commercial practices. This case is far from being "trial ready."

Therefore, in view of the lack of significant prejudice and the extent of trial preparation still needed, this Court finds that any disadvantages inuring to Neo Sack as a result of the delay are more than offset by the convenience to both parties of an Indian forum.

### C. *Public Interest Factors.*

 The central question a court must answer when considering the public interest is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it. *Pain,* 637 F.2d at 791. This Court's examination of the public interest considerations indicates that no such nexus exists here. There appears to be little or no public interest in this dispute, questions of foreign law will predominate, and the retention of jurisdiction will be burdensome to the court and to the community. *See Air Crash Disaster,* 821 F.2d at 1165–66; *Pain,* 637 F.2d at 792.

 The public interest factors generally considered in a *forum non conveniens* analysis include:

1. The administrative difficulty flowing from court congestion;
2. The local interest in having localized controversies decided at home;
3. The interest in having a diversity case tried in a forum that is familiar with the law governing the action;
4. The avoidance of unnecessary problems of the conflict of law or the application of foreign law; and

5. The unfairness of burdening citizens in an unrelated forum with jury duty.

*Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843.

### 1. Choice of Law.

Choice of law principles dictate that Indian law is applicable to this dispute, a factor this Court considers to be pivotal in declining jurisdiction. *See Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843; *DeMateos v. Texaco, Inc.,* 562 F.2d 895, 899 (3d Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978); *Koziol v. The Fylgia,* 230 F.2d 651, 652 (2d Cir.), *cert. denied,* 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49 (1956); *Gas Plant Disaster,* 634 F.Supp. at 866; *Del Rio v. Ballenger Corp.,* 391 F.Supp. 1002, 1004 (D.S.C.1975); *Noto v. Cia Secula di Armamento,* 310 F.Supp. 639, 648 (S.D.N.Y.1970).

 A conflict of laws analysis in this forum in a diversity case involves a weighing of the factors set forth in the Restatement (Second) of Conflicts of Law (1971) ("Restatement"). *See Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991); *De Santis v. Wackenhut Corp.,* 793 S.W.2d 670, 678 (Tex.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). *See also Gulf Trading & Transp. Co. v. Vessel Hoegh Shield,* 658 F.2d 363, 366 (5th Cir. 1981), *cert. denied,* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982). When the parties to a contract have not chosen what law is to govern their agreement, section 188(1) of the Restatement provides that the rights and duties of the parties are determined by the local law of the state or country that has the most significant relationship to the transaction and the parties. *Maxus,* 817 S.W.2d at 53. Section 188 of the Restatement lists the following factors to be considered in analyzing a conflicts question arising from a contract dispute:

1. The place of contracting;
2. The place of negotiation of the contract;
3. The place of performance;
4. The location of the subject matter of the contract; and

5. The domicile, residence, and nationality, place of incorporation and place of business of the parties.

*Id.*

In the instant case, the place of contracting and of contract negotiation was India, where two Indian companies negotiated the terms of the indent. The contract was to be performed principally in India, where the HDP was to be delivered to Neo Sack. While Vinmar ultimately was to collect on Neo Sack's letter of credit in Texas, Neo Sack was to obtain and pay for the letter of credit in India, at an Indian bank. The subject matter of the contract, the HDP, was located in Europe, not the United States, and was to be shipped directly to India. The parties to this action are an Indian corporation and a Texas corporation that does business in India through an Indian agent, which was responsible for negotiating the terms of the indent.

The Restatement also sets forth general principles to be considered in choice of law matters. These factors include: (i) the needs of the international system, (ii) relevant policies of the forum, (iii) relevant policies of other interested states, (iv) the protection of justified expectations, (v) the basic policies underlying the particular field of law, (vi) certainty, predictability and uniformity of result, and (vii) ease in the determination and application of the law to be applied. *Maxus*, 817 S.W.2d at 54.

An Indian court has more of an interest in resolving the present dispute than a Texas court. There is no overriding American interest in providing a home forum for this type of controversy. To the contrary, in this case, where two Indian companies negotiated an indent for goods to be shipped from Europe to India, the needs of the international system are best served by having an Indian court resolve any disputes arising out of the transaction. Because all the communications occurred between Neo Sack and Chemie in India, Vinmar did not arrange for shipment of the goods or collect on a letter of credit, and the indent contained an Indian forum selection clause, Vinmar could not justifiably expect to be sued for breach of contract in the United States. The policies and interests of the governments of India and the United States are best served by requiring that this dispute be resolved in the country where the dispute arose. Indian courts are also more able to apply their law to the action than is this Court.

Therefore, the choice of law factors weigh heavily in favor of the selection of Indian law. In fact, at a hearing held on December 3, 1992, before the motion to dismiss was filed, counsel for both parties appeared to be in agreement that Indian law governed this dispute. Accordingly, this Court finds that Indian law controls this case and that Indian courts are far better suited to applying that law and resolving the differences between the parties. *See Gas Plant Disaster*, 634 F.Supp. at 866.

### 2. Local Interest.

 The citizens of this District and of the United States as a whole have little interest in the outcome of this seemingly routine, Indian commercial dispute. India is the location with a strong local interest in this controversy. All events relating to this action occurred in India, and that is where Neo Sack was damaged, if at all, by the alleged breach of contract. Because Indian law applies, the decision in this case would have no precedential impact in the United States. As an Indian corporation with no office or other nexus to this state, Neo Sack has no inherent right to seek relief in this forum. *See Jeha*, 751 F.Supp. at 127–28. Even when an action is filed by an American citizen, the courts have not hesitated to dismiss the complaint for *forum non conveniens* where a danger of injustice, oppression or vexation is found. *See Pain*, 637 F.2d at 791; *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 977–78 (9th Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978).

It is India that has a local interest in providing redress to Neo Sack, a citizen of India, if it is found to be entitled to relief. It is also India that has a pervading interest in seeing that its commercial laws are

followed. Any decision rendered in this case would have an effect on Indian commerce and would provide guidance to Indian citizens in conducting their commercial affairs. In contrast, there are no significant interests that would be furthered by this Court's adjudication of this uniquely Indian dispute. *See Ionescu*, 465 F.Supp. at 146. The incremental deterrence that might be gained if Vinmar were held liable in Texas as opposed to India is likely to be inconsequential. The American interest in this controversy is slight and is insufficient to justify the commitment of judicial time and resources that would inevitably be required if the case were to be tried here. *See Piper*, 454 U.S. at 260–61, 102 S.Ct. at 268; *Gas Plant Disaster*, 634 F.Supp. at 862–63.

### 3. Burden to the Courts and to the Community.

The courts of this district are congested with cases having a far greater nexus to Texas and to the United States than this dispute. At present, the Southern District of Texas has a number of judicial vacancies and each sitting judge has a heavy caseload. The demands of a sizable criminal docket and the priority given to criminal cases leads to an inevitable backlog of civil cases. Therefore, the conservation of judicial resources is an extremely important objective. This objective is better served by this Court's dismissal of the instant case. It is not in the public interest to further encumber this docket with cases that have only a minimal connection to and no precedential impact upon the local community. *See Cuevas v. Reading & Bates Corp.*, 577 F.Supp. 462, 476 (S.D.Tex.1983), *aff'd*, 770 F.2d 1371 (5th Cir.1985). *Accord Gas Plant Disaster*, 634 F.Supp. at 861 (citing *Domingo v. States Marine Lines*, 340 F.Supp. 811, 816 (S.D.N.Y.1972)).

Furthermore, it would be an undue burden upon the citizens selected for jury duty to devote their time and attention to deciding this case rather than the many cases with a far more compelling relationship to local interests. Jury duty is a burden that ought not to be imposed upon the people of a community that has no relation to the litigation. *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843. It would be difficult for a Texas jury, with no familiarity of Indian commercial practices or customs, to understand and apply Indian law to resolve an Indian commercial dispute. Thus, the interests of the court and the community are furthered by this Court declining jurisdiction over this matter.

### III. CONCLUSION.

This Court finds that the interests of the parties and of the public are better served by dismissing the instant action on *forum non conveniens* grounds. The courts of India provide an available, adequate, and appropriate forum for the resolution of this dispute.

Therefore, it is ORDERED that this case is dismissed under the following conditions:

1. Vinmar shall submit to the jurisdiction of the appropriate Indian court in which Neo Sack has filed suit within ninety (90) days of this order of dismissal;

2. Vinmar shall waive any statute of limitations or jurisdictional defenses that could be posed in the Indian court;

3. Vinmar shall abide by its stipulation that it will be bound by all discovery conducted in this case in the Indian proceeding;

4. Vinmar shall make available in India all relevant documents and witnesses within its control;

5. Vinmar shall abide by its stipulation that it will exercise its best efforts to expedite discovery and a trial setting in the Indian proceeding, including waiving the initial service requirements under Indian law;

6. Within thirty (30) days of this order of dismissal, Vinmar shall post with the Registry of the Court a $200,000.00 cash deposit or surety bond from one of the sureties approved by the Southern District of Texas payable to Neo Sack to secure the payment of any final judgment entered by the Indian court.

Should Vinmar fail to meet any of these conditions, this Court will resume jurisdiction over the case.