SEGUROS COMERCIAL AMERICAS
S.A. de C.V., Plaintiff,

v.

AMERICAN PRESIDENT LINES,
LTD., Defendant.

Civil Action No. H–95–1488.

United States District Court,
S.D. Texas,
Houston Division.

Oct. 4, 1995.

Dana Keith Martin, John Thomas Beard, Hill, Rivkins, Loesberg, Houston, TX, for plaintiff.

Gus A. Schill, Jr., Charles S. Kinzel, Trevor R. Jefferies, Royston, Rayzor, Houston, TX, for defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

### I. Factual and Procedural History

This action involves the intended shipment of Reebok Tennis shoes, from Jakarta, Indonesia, to Leon, Mexico. The shipper was Reebok International, Ltd., a multinational company with offices worldwide. The consignee was RBK International (Mexico), S.A. de C.V. The plaintiff, Seguros Comercial America, S.A. de C.V. ("Seguros"), a Mexican insurance company, is the subrogee of RBK International (Mexico). The carrier is American President Lines, Ltd. ("APL"), a Delaware corporation with headquarters in California.

On January 17, 1994, APL issued a through bill of lading covering the contents of a container of 795 packages of footwear. The cargo was first shipped from Jakarta to Singapore aboard the M/V FAIRY EAGLE and then transferred to the M/V OOCL FAME for ocean transport to Long Beach, California. Once in California the cargo was discharged for overland transport to Leon, Mexico. The cargo proceeded by rail aboard Southern Pacific Railroad to San Antonio, Texas, and then by truck to Laredo, Texas. From Laredo a second trucker took the cargo to Nuevo Laredo, Mexico. Once in Mexico the goods were placed aboard a long-haul Mexican trucker, Transportes Lar–Mex ("TLM"), with Leon as the intended destination. During this trip the truck was hijacked by bandits near San Luis Potosi, Mexico. Mexican authorities investigated the crime but the cargo has not been recovered.

The carrier for each leg of the journey was either APL or a carrier selected and paid by APL. As a result, Seguros Comercial, the insurer and subrogee of RBK International (Mexico), sued APL in San Antonio for negligence in failing to provide adequate security for the transit in Mexico, for negligent entrustment of the goods to TLM during the carriage, for negligence under *res ipsa loquitur*, and for negligent bailment.[1] APL removed the case to the United States District

---

1. *Seguros Comercial America, S.A. de C.V. v. American President Lines, Ltd.*, District Court of Bexar County, 45th Judicial District, Cause No. 94–CI–17287.

Court, Western District of Texas, San Antonio Division, and venue was transferred to this court on May 3, 1995. Pending before the court is APL's Motion to Dismiss Based on Forum Non Conveniens (Docket Entry No. 17) to which Seguros has replied (Docket Entry No. 22).

## II. *Applicability of 49 U.S.C. § 11707 & 46 U.S.C.App. § 1300*

As a preliminary matter the court must deal with Seguros' contention that either the Carmack Amendment, 49 U.S.C. § 11707 *et seq.*, or the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. § 1300 *et seq.*, requires the court to exercise jurisdiction over this case.

### A. Carmack Amendment

■■■■ The Carmack Amendment is an amendment to the Interstate Commerce Act that imposes liability on certain carriers for the loss of goods. 49 U.S.C. § 11707; *see Reider v. Thompson*, 339 U.S. 113, 70 S.Ct. 499, 94 L.Ed. 698 (1950). It applies to "a common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title." 49 U.S.C. § 11707(a)(1). This jurisdiction does not extend to shipments by water, rail or motor carriers from a foreign country to the United States, *see* 49 U.S.C. §§ 10501, 10521, and 10561, unless a domestic segment of the shipment is covered by a separate domestic bill of lading for paid consideration. *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 703 (4th Cir.1993); *Capitol Converting Equipment, Inc. v. LEP Transport, Inc.*, 965 F.2d 391, 394 (7th Cir. 1992). A bill of lading issued in a foreign country to govern a shipment throughout its transportation from abroad to its final destination in the United States is termed a "through" bill of lading. *Id.* Because a through bill of lading includes no separate domestic segment, the Carmack Amendment

does not apply to such shipments. *See id.*; *Tokio Marine & Fire Ins. Co. v. Hyundai Merchant Marine Co.*, 717 F.Supp. 1307, 1309 (N.D.Ill.1989); *Fine Foliage of Florida, Inc. v. Bowman Trans., Inc.*, 698 F.Supp. 1566, 1571 (M.D.Fla.1988), *aff'd*, 901 F.2d 1034 (11th Cir.1990). *See also Reider*, 339 U.S. at 115–16, 70 S.Ct. at 501 (earlier version of Carmack Amendment does not cover goods shipped under a through bill of lading issued in a foreign country).

■■■■ Whether a bill of lading is a through bill of lading is predominately a question of fact. *LEP Transport*, 965 F.2d at 394. The relevant factors include whether the final destination is designated on the bill of lading, the method by which the connecting carriers are compensated, and, more generally, the conduct of the carriers. *Tokio Marine*, 717 F.Supp. at 1309. Although in this case the final destination of the shipment was Mexico, not the United States, the analysis is the same. The test is where the obligation of the carrier as receiving carrier originated. *See Reider*, 339 U.S. at 117–18, 70 S.Ct. at 502. Here, APL's obligation originated in Indonesia and continued to Leon, Mexico.[2] The bill of lading recites that the "place of receipt is Jakarta," and the "place of delivery is Leon, Mexico."[3] "It is well settled that, in determining whether a particular movement of freight is interstate or intrastate or foreign commerce, the intention existing at the time the movement starts governs and fixes the character of the shipment." *State of Texas v. Anderson, Clayton & Co.*, 92 F.2d 104, 105 (5th Cir.), *cert. denied*, 302 U.S. 747, 58 S.Ct. 265, 82 L.Ed. 578 (1937).

Seguros' attempt to contradict the terms of the bill of lading by deposition testimony and by isolated language from APL's tracking papers that followed the movement of the cargo are not persuasive. The tracking papers clearly denote a carriage by through bill of lading.[4] Plaintiff attempts to show by the

---

**2.** Bill of Lading, Docket Entry No. 22, Exhibit 22.

**3.** Plaintiff's Original Petition (Docket Entry No. 3 at ¶ 5) and Plaintiff's Response to Defendant's Motion to Transfer (Docket Entry No. 9 at ¶ VIII)

admit that APL shipped the goods from Jakarta under a through bill of lading.

**4.** Exhibit C to Hidalgo Declaration, Docket Entry No. 17, Tab A.

deposition testimony of APL's Laredo employee, John M. Doran, that the through bill of lading governed only the land portion of this shipment, and was thus separate from the bill of lading that governed the ocean voyage.[5] There is no evidence that a separate bill of lading was issued for the transit across the United States,[6] however, and it is clear that Doran's deposition testimony refers not to any bill of lading, but to columns in APL's tracking records.[7]

The *Tokio Marine* indicia provide further evidence that a through bill of lading governed this shipment. The face of the bill of lading contains the final destination of Leon, Mexico. The connecting carriers are compensated by APL directly,[8] and the carriers acted as contractors of APL and did not deal directly with RBK International (Mexico).[9] *See Tokio Marine*, 717 F.Supp. at 1309. Because the court concludes that the shipment was governed by a through bill of lading it is not subject to the Carmack Amendment.

## B. COGSA

■ The COGSA governs all bills of lading evidencing the contract of "carriage of goods by sea ... to ports of the United States, in foreign trade." 46 U.S.C.App. § 1300. The Act permits carriers to limit their liability to $500 per package:

Neither the carrier nor the shipper shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

46 U.S.C.App. § 1304(5). This limitation protects carriers who are often unaware of the value of goods they ship and effectively requires shippers to bargain for greater protection. *Tokio Marine*, 717 F.Supp. at 1308; *Ulrich Ammann Building Equip., Ltd. v. M/V Monsun*, 609 F.Supp. 87, 89 (S.D.N.Y. 1985). Although COGSA normally covers "the period from the time when the goods are loaded on to the time when they are discharged from the ship," 46 U.S.C.App. § 1301(e), the provisions of COGSA may contractually be extended after the discharge of cargo from a ship. *Toshiba Int'l Corp. v. M/V Sea-Land Express*, 841 F.Supp. 123, 125 (S.D.N.Y.1994). Such an extension of COGSA is valid if evidenced in the bill of lading. *Id.*; *Tokio Marine*, 717 F.Supp. at 1310; *cf. Mori Seiki USA, Inc. v. M/V Shin Kashu Maru*, 702 F.Supp. 613, 614 (N.D.Tex. 1988) ("Parties to a bill of lading may extend its contractual benefits to a third party if they clearly express their intent to do so."). When so extended, the incorporated COGSA

---

5. Plaintiff's Response to Defendant's Motion to Dismiss on Forum Non Conveniens, Docket Entry No. 22 at pp. 15–16; Deposition of John M. Doran, Jr., Docket Entry No. 22, Exhibit A at pp. 52–53.

6. Even if a separate bill of lading had been issued, there is no showing that any additional consideration was paid for a second bill of lading. In *Mexican Light & Power Co. v. Texas Mexican R.R.*, 331 U.S. 731, 67 S.Ct. 1440, 1441–42, 91 L.Ed. 1779 (1947), the Court held that a shipment from Pennsylvania to Mexico with a change of carriers at Laredo, Texas, under a separate bill of lading, was not subject to an earlier version of the Carmack Amendment because the second bill of lading was not issued for any additional consideration. The Court held that the shipment was a *de facto* through shipment.

7. When plaintiff's attorney asked Doran about "THR" at pages 51 through 53 of his deposition

he was referring to copies of APL's tracking records (Hidalgo Declaration, Docket Entry No. 17, Tab A, Exhibit E). The tracking records for 1/7/94, 1/15/94, and 1/19/94 refer to the shipment at sea. The "SERVICE TY" space is blank for these dates. Once the ship arrived in California the records beginning on 2/7/94 reflect the "SERVICE TY" as "THR," which Doran calls the through service for the land transportation. There is no evidence that Doran was referring to a separate bill of lading. Instead, Doran was merely explaining that the shipment was a through shipment that did not originate in California but from elsewhere outside the United States.

8. Hidalgo Declaration, Docket Entry No. 17, Exhibit G; Doran Deposition at p. 86, Docket Entry No. 17, Exhibit A.

9. See Bill of Lading at ¶ 6, Docket Entry No. 17, Exhibit D; Doran Deposition at pp. 56, 132, 135, 193, and 210–11; Docket Entry No. 22, Exhibit A.

provisions only function as contractual terms and not otherwise by force of law. *Croft & Scully Co. v. M/V Skulptor Vuchetich,* 664 F.2d 1277, 1280 & n. 8 (5th Cir.1982) ("[W]hen COGSA does not apply of its own force but is incorporated into a maritime contract by reference, it does not have 'statute rank;' rather, it is merely part of the contract, a term like any other."); *Seguros Illimani S.A. v. M/V POPI P,* 929 F.2d 89, 93 (2d Cir.1991) (accord); *Toshiba Int'l,* 841 F.Supp. at 125 (accord).

▮ The Second, Third, Fourth, Fifth, and Ninth Circuits have held that contractual terms in a bill of lading that are inconsistent with COGSA control when COGSA is applied only by contract. *See, e.g., Pannell v. U.S. Lines Co.,* 263 F.2d 497, 498 (2d Cir.) (definition of the term "package" that appeared in the bill of lading controlled over an inconsistent definition in COGSA), *cert. denied,* 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959); *PPG Indus., Inc. v. Ashland Oil Co.—Thomas Petroleum Transit Div.,* 527 F.2d 502, 507 (3d Cir.1975) (parties could have extended, but neglected to do so, COGSA's statute of limitations provision to agent of carrier); *Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico,* 607 F.2d 322, 328 (4th Cir.1979) (specific definition of "package" in bill of lading controls over definition in COGSA); *Ralston Purina Co. v. Barge Juneau,* 619 F.2d 374, 375–76 (5th Cir.1980) (parties' agreement to one-year limitation on suit prevails over COGSA provision); *Institute of London Underwriters v. Sea–Land Service, Inc.,* 881 F.2d 761, 766 (9th Cir.1989) (parties free to define covered "goods" in a way contrary to COGSA's definition).[10] *See also* 2 Schoenbaum, *Admiralty & Maritime Law* § 10–19 (2d ed. 1994).

The parties agree that the Clause Paramount and the Limitation on Carrier's Liability Clause on the back of the bill of lading contractually extend the coverage of COGSA. The Clause Paramount reads:

The receipt, custody, carriage, and delivery of the Goods are governed by the provisions of the transportation agreement evidenced hereby and incorporated by this reference, including ... (ii) the terms and conditions stated on the front and back of this bill of lading, and (iii) the provisions of [COGSA] or the Hague Rules ... in effect in the country in which a court having jurisdiction adjudicates a dispute arising out of the transportation agreement. Such Act and Rules shall be extended to apply to ... before the Goods are loaded on and after they are discharged from the Vessel, and throughout the entire time during which the Carrier is responsible for the Goods under the transportation agreement ... The provisions of ... this bill of lading and said COGSA or Hague Rules shall govern the relationships between the Shipper, Consignee ... and the Carrier ... in every contingency whatsoever, and shall supersede any prior booking arrangement, mate's or dock receipt, or other arrangement to the extent conflicting.[11]

The Limitation on Carrier's Liability Clause also specifically extends the $500 per package limit imposed by COGSA to the shipment. The Clause reads in part:

... Unless the shipper shall cause the value of the Goods to be declared before shipment and elect to pay freight at the ad valorem rate, Shipper elects to ship under the regular (lower) rate and agrees that for the purpose of computing any liability of the Carrier for loss or damage, the value of the Goods shall be their market value at destination ... not in any event exceeding $500 per package lawful money of the United States, or in case of Goods not shipped in packages, $500 per customary freight unit....[12]

Pursuant to the Clause Paramount, other terms and conditions of the bill of lading are also to be given effect.[13] The face of the bill of lading states "Mexico Liability Clause as

---

**10.** *Accord, Enterprise, Inc. v. M/V Sam Houston,* 706 F.Supp. 451, 453 (E.D.La.1988) (limitation of liability in bill of lading prevails over any conflicting COGSA provision that is incorporated by reference into the bill of lading).

**11.** Bill of Lading at ¶ 2, Docket Entry No. 22, Exhibits C & D.

**12.** Bill of Lading at ¶ 4.

**13.** Bill of Lading at ¶ 2(ii).

per attached." The terms of the attached Mexico Liability Clause read:

> SPECIAL NOTICE AND AGREE- MENT: Shipper, consignee, and all others having an interest in the goods acknowl- edge that numerous armed hijackings of containerized cargo have occurred on the public streets and highways of Mexico. Except as provided below it is hereby ac- knowledged that APL's liability in connec- tion with cargo loss, damage, and delay occurring while in custody of rail and mo- tor carriers in Mexico shall be determined in accordance with the national law of Mexico ... as well as this bill of lading. APL shall have the benefit of all exemp- tions from and limitations on liability as shall apply under the terms and conditions of the contract of carriage issued by or applicable to rail and motor carriers partic- ipating in a through route from or to a Mexico origin or destination under the bill of lading and which apply to the lowest rates offered by such carriers.
>
> Notwithstanding the foregoing, if the value of the cargo is declared and an additional ad valorem rate in the amount of .3% of total U.S. $ declared valuation is paid, APL's liability, if established, for cargo loss, damage, and delay occurring in Mexi- co, shall not be less than the full value of the goods at the time and place of loss or damage.
>
> The exemptions from and limitations on liability provided under such underlying rail and motor contracts of carriage and national law are cumulative and are in addition to those specified and incorporat- ed into this bill of lading.[14]

Seguros argues that COGSA governs the entire shipment including the Mexico portion of the carriage and voids the Mexico Liability Clause by force of law.[15] Because the cargo was off-loaded in Los Angeles for cross-coun- try rail shipment to San Antonio, Texas, Se- guros argues that COGSA was triggered and therefore that the proper jurisdiction of this action is in the United States. Because COGSA as applied by force of law voids any limitation of liability less than $500 per pack- age,[16] Seguros also argues that the Mexico Liability Clause is void.[17] Seguro argues that by its own terms the Mexico Liability Clause does not override the bill of lading. "Instead it is to be taken in addition to, and in conjunction with, the covering APL bill of lading."[18] The court is not persuaded by any of Seguros' arguments.

■ It is true that if COGSA were applica- ble *ex proprio vigore* a foreign choice of law clause limiting a carrier's liability to less than $500 per package would be invalid under § 1303(8) of COGSA. Moreover, a choice of law clause might be void under § 1312 of COGSA for a domestic carriage by sea be- tween any two ports of the United States if the bill of lading explicitly extended coverage of COGSA to cover the carriage. *See Conk- lin & Garrett, Ltd. v. M/V Finnrose,* 826 F.2d 1441, 1442–44 (5th Cir.1987). Because in the present case COGSA is incorporated into a bill of lading as a contractual term, and is not applicable under § 1312, the specific contract provisions that qualify COGSA's ap- plication are given effect. *See Ralston Puri- na,* 619 F.2d at 375–76; *North River Ins. Co. v. Fed Sea/Fed Pac Line,* 647 F.2d 985 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 662 (1982) (foreign jurisdiction clause valid when COGSA applies only as contract term); 2 Schoenbaum, § 10– 21 at 93 ("Where COGSA applies only con- tractually, by agreement of the parties, and not as a matter of law, a provision stipulating choice of law or forum will be upheld. This is because in such a case COGSA does not have a 'statute' rank but is a contractual term like any other and may be varied by agreement.").

---

**14.** Mexico Liability Clause, Docket Entry No. 22, Exhibit G.

**15.** Plaintiff's Response to Defendant's Motion to Dismiss Based on Forum Non Conveniens at p. 5, Docket Entry No. 22.

**16.** 46 U.S.C. § 1303(8).

**17.** This contention is based on the allegation, unchallenged by APL, that as a result of the devaluation of the peso, the Mexico Liability Clause limits APL's liability beneath the $500 per package threshold of COGSA.

**18.** Plaintiff's Reply at pp. 7–8, Docket Entry No. 22.

In this case COGSA applies contractually, not by force of law, to the portion of the shipment after the cargo was off-loaded in Long Beach. Without more, COGSA would govern this case and set the liability of APL at $500 per package. However, the bill of lading also incorporates the Mexico Liability Clause as another contractual term. This clause applies the law of Mexico to any cargo loss by motor carriers in Mexico. The resulting liability under this clause is less than $500 per package. Where, as here, COGSA only applies contractually, and not as a matter of law, a more specific contractual provision stipulating a choice of law will be upheld. *North River Ins.*, 647 F.2d at 989; 2 Schoenbaum § 10–21 at 93. The Mexican choice of law provision will therefore be given effect.

 Seguros argues alternatively that even if COGSA does not apply by force of law to void the choice of law clause the language of the Mexico Liability Clause voids itself. By its own terms, Seguros asserts, the Clause does not override COGSA but is to be taken in conjunction with COGSA, which sets a floor of liability at $500 per package. The plain language of the Mexico Liability Clause envisions a different result, however. It states that the exemptions and limitations on liability in the Clause are to be "cumulative" and "in addition to" those specified elsewhere in the bill of lading. If COGSA as applied contractually limits APL's liability to $500 per package for the journey, then the more specific Mexico Liability Clause creates an additional limit on liability for applicable losses occurring in Mexico. Reading the Mexico Liability Clause in this way gives full ·effect to the contractual language that the Clause is a limitation on liability that "is cumulative of and in addition to" the limitation on liability provided for elsewhere in the bill of lading.[19]

The court concludes that under the bill of lading the general COGSA provision applies by force of law while the goods were in transit from Jakarta to Los Angeles and by contractual agreement while the goods were in-transit across the United States to Laredo, and that the provisions of the more specific Mexico Liability Clause also applied while the goods were in-transit across Mexico. *See United States Postal Service v. American Postal Workers Union, AFL–CIO,* 922 F.2d 256, 260 (5th Cir.), *cert. denied,* 502 U.S. 906, 112 S.Ct. 297, 116 L.Ed.2d 241 (1991) (When specific and general provisions of an agreement conflict, well-established principles of construction require that the specific trump the general); *Com. Petrochemicals, Inc. v. S/S Puerto Rico,* 607 F.2d 322 (4th Cir.1979) (As between a general and specific provision

19. General contract interpretation doctrine supports the court's analysis. When construing a contract the court must harmonize and give effect to all the provisions of an instrument so that none of the writing will be rendered meaningless. *Tennessee Gas Pipeline Co. v. FERC,* 17 F.3d 98, 102 (5th Cir.1994); *Chapman v. Orange Rice Milling Co.,* 747 F.2d 981, 983 (5th Cir. 1984); *American Guarantee and Liability Ins. Co. v. Shel–Ray Underwriters, Inc.,* 844 F.Supp. 325, 331 (S.D.Tex.1993); *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (1951). If the provisions in the instrument appear to conflict, they should be adapted to reflect the true intentions of the parties. *American Guarantee,* 844 F.Supp. at 331; *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983). The court must give weight to each portion of the instrument unless there is an irreconcilable conflict. *Id.* No single provision taken alone will be given controlling effect; rather, all provisions must be considered with reference to the whole instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Bush v. Brunswick Corp.,* 783 S.W.2d 724, 728 (Tex.App.—Fort Worth 1989, writ denied).

The Clause Paramount expresses the parties' intent to incorporate both the provisions on the front and back of the bill of lading and the provisions of COGSA. The Clause states: "The . . . delivery of the Goods are governed by . . . (ii) the terms and conditions on the front and back of this bill of lading, and (iii) the provisions of [COGSA] or the Hague Rules" (Bill of Lading at ¶ 2, Docket Entry No. 22, Exhibits C & D). The Mexico Liability Clause, which is incorporated on the front of the bill of lading, and COGSA, which is incorporated on the back, should both be given effect if possible. "The provisions of . . . this bill of lading and said COGSA or Hague Rules shall govern the relationships . . . in every contingency whatsoever . . . and shall supersede any . . . other arrangement to the extent conflicting" (Bill of Lading at ¶ 2, Docket Entry No. 22, Exhibits C & D). The interpretation urged by Seguros would violate these rules of contract construction because it would give COGSA controlling effect over every other term in the instrument and would render the Mexico Liability Clause meaningless.

of an ocean bill of lading, effect is to be given to the more specific). Because the Mexico Liability Clause applies, the court also concludes that the parties' choice of the law of Mexico governs the loss in this case.[20]

### III. *Forum Non Conveniens*

Although the law of Mexico applies to the instant case, the court must still consider all the relevant *forum non conveniens* factors before determining whether to dismiss the case. *See Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 879 & n. 2 (5th Cir.1987).

#### A. Standard of Review

When considering a motion to dismiss for *forum non conveniens* "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324, 1355 (S.D.Tex.1995) (quoting *Koster v. Lumbermen's Mutual Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947)). "[T]he decision to grant or deny a motion to dismiss for forum non conveniens is within the discretion of the district court, [but] it should be an exercise in structured discretion founded on a procedural framework guiding the district court's decisionmaking process." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir.1987) (en banc) (citations omitted).[21]

In the Fifth Circuit the *forum non conveniens* analysis involves a three-step inquiry. "First, the court must determine whether there exists another forum that is available to the litigants and would provide an adequate remedy to the prevailing party...." *Delgado*, 890 F.Supp. at 1355 (quoting *Baumgart v. Fairchild Aircraft Corp.*,

981 F.2d 824, 835 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993)).

> If the court concludes that the foreign forum is both available and adequate, it should then consider all of the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum.... If the district court finds that the private interests do not weigh in favor of the dismissal, it must then consider the public interest factors.

*In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d at 1165. "[A] forum non conveniens dismissal must be based on the finding that, when weighed against the plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Delgado*, 890 F.Supp. at 1356. Defendants bear the "burden of persuasion ... [as] to all the elements of the forum non conveniens analysis." *Id.* (quoting *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d at 1164).

#### B. Availability of an Adequate Alternative Forum

"Because in all cases in which the doctrine of forum non conveniens comes into play it presupposes at least two forums in which the defendant is amenable to process, a forum non conveniens dismissal should never be granted unless the defendant can satisfy the court that an adequate and available alternative forum exists." *Delgado*, 890 F.Supp. at 1356 (citations and quotations omitted). Determining whether an alternative forum is available and adequate is a two-step process.

**20.** *Cf. The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (enforcing a forum selection clause in the absence of COGSA). Even where a choice of law or forum selection clause would normally be void under COGSA as applied *ex proprio vigore*, courts may exercise discretion to decline jurisdiction on the basis of *forum non conveniens. See Union Ins. Society of Canton, Ltd. v. S.S. Elikon*, 642 F.2d 721, 725–26 (4th Cir.1981); *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2d Cir.1967); *Monsanto Int'l Sales Co. v. Hanjin Container Lines*, 770 F.Supp. 832 (S.D.N.Y.1991), *modified by* 1991 WL 210951 (S.D.N.Y.1991), *aff'd*, 962

F.2d 4 (2d Cir.1992); 2 Schoenbaum § 10–21 at 91–92.

**21.** The Supreme Court granted a petition for writ of certiorari and vacated the judgment in *Pan American World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). On remand the Fifth Circuit reinstated the opinion of the *en banc* court except as to the damages for international air travellers. *In re Air Crash Disaster Near New Orleans, La.*, 883 F.2d 17 (5th Cir.1989).

A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly even though they may not enjoy the same benefits as they might receive in an American court.

*In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d at 1165 (citations omitted).

### 1. *Availability*

■■■ Having already dealt with Seguros' argument that Mexico does not provide an available alternative forum because the Carmack Amendment or COGSA should be applied in this case, the court will address the standard *forum non conveniens* issues related to availability. APL has agreed to submit to the jurisdiction of Mexican courts. The "defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of forum non conveniens analysis." *Veba–Chemie A.G. v. M/V GETAFIX,* 711 F.2d 1243, 1245 (5th Cir. 1983). *See Delgado,* 890 F.Supp. at 1357.[22]

### 2. *Adequacy*

■■■ Seguros argues that the courts of Mexico are inadequate because Mexican law does not provide a remedy that is comparable to the remedy available in an American forum applying our laws.[23] Relying on *Irish Nat'l Ins. Co. v. Aer Lingus Teoranta,*[24] Seguros argues that where the amount recoverable in the foreign forum is so small that the likelihood is that the case will never be tried in the foreign forum, the United States court should retain jurisdiction. The Fifth Circuit has clarified that a court may conclude that an adequate alternative forum exists even though plaintiffs may not find a substantially comparable remedy in the foreign forum.

*Piper Aircraft [Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ] held that a difference in the substantive law governing the action "should not be given conclusive or even substantial weight in the forum non conveniens inquiry." In *Piper* that meant that the unavailability of strict liability as a theory of recovery was insufficient to render a Scottish forum inadequate for the resolution of a products liability action. The Supreme Court recognized, however, that there will be circumstances in which the remedy afforded by the alternative forum will be so clearly inadequate or unsatisfactory "that dismissal would not be in the interest of justice." Those circumstances do not arise unless a party "will be deprived of any remedy or [will be] treated unfairly."

*Syndicate 420 at Lloyd's London v. Early American Ins. Co.,* 796 F.2d 821, 829 (5th Cir.1986) (citations omitted). *Accord, Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138, 1145 (5th Cir.), *cert. denied,* 493 U.S. 918, 110 S.Ct. 279, 107 L.Ed.2d 259 (1989). Foreign law is presumed to be adequate unless the plaintiffs make some showing to the contrary, or unless conditions in the foreign forum made known to the court plainly demonstrate that the plaintiffs are highly unlikely to obtain basic justice there. *Torreblanca de Aguilar v. Boeing Co.,* 806 F.Supp. 139, 143 (E.D.Tex.1992), *aff'd,* 11 F.3d 55 (5th Cir.1993) ("[T]he comparable amount of recovery obtainable in the alternative [forum] has never been considered a factor relevant to the *forum non conveniens* inquiry."); *Neo Sack, Ltd. v. Vinmar Impex, Inc.,* 810 F.Supp. 829, 834 (S.D.Tex.1993); *Simcox v. McDermott Int'l, Inc.,* 152 F.R.D.

---

**22.** Since neither party disputes the ability of a Mexican court to exercise jurisdiction over Seguros' claims against APL, the court need not condition dismissal on the acceptance of jurisdiction by the Mexican courts.

**23.** Seguros points out that recovery in Mexico will be limited to approximately $2.55/ton as opposed to a possible $500 per package limitation under COGSA (See Declaration of Roberto Rendon at p. 5, ¶ 5, Docket Entry No. 17, Tab B.).

**24.** 739 F.2d 90, 91 (2d Cir.1984) (dicta) ("In some instances ... invocation of the doctrine [of forum non conveniens] will send the case to a jurisdiction which has imposed such severe monetary limitations on recovery as to eliminate the likelihood that the case will be tried ... Although the procedure [to weigh the merits of trial in Ireland against a trial in America] smacks somewhat of a legal charade, we will proceed on the same assumption.").

689, 696 (S.D.Tex.1994) (both citing *Pain v. United Technologies Corp.*, 637 F.2d 775, 794 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)). As long as Seguros is not deprived of any remedy or treated unfairly in the courts of Mexico, the comparable amount of recovery is not a factor to be addressed by the court in this case.

APL relies upon the affidavit of Roberto Rendon, a highly qualified Mexican attorney, to show the adequacy of the Mexican courts. Sr. Rendon states that both local and federal courts in Mexico would accept jurisdiction based on Section 1104, Paragraph II of the Mexican Commercial Code. The land transportation provisions of the Mexican Regulations on Multimodal International Transportation of Merchandise would apply to the loss in this case. If Seguros prevails a Mexican court would award damages in accordance with Section 66, Paragraph V of the Federal Law of Roads, Bridges and Motor Carriage.[25] Seguros does not question the accuracy of these statements. Moreover, because Mexican law applies to this case whether it is tried in this forum or in Mexico, Seguros, as a corporate citizen of Mexico, is not prejudiced by the Mexican courts applying Mexican law to resolve its claims. *See Neo Sack*, 810 F.Supp. at 834. Accordingly, the court concludes that Seguros will not be treated unfairly or deprived of all remedies in the courts of its home country of Mexico.

## C. Private Interest Factors

Once a court has concluded that a "foreign forum is both available and adequate, it should then consider all of the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d at 1165.

### 1. The relevant deference to plaintiff's choice of forum

■ Although the court is mindful that Seguros chose a Texas forum and that deference is generally given to the plaintiff's choice of forum, in this case no substantial

deference is due because Seguros is a citizen of Mexico. A foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home forum. *Piper Aircraft v. Reyno*, 454 U.S. 235, 253–57, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981); *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 373 (5th Cir.1992); *Jeha v. Arabian Am. Oil Co.*, 751 F.Supp. 122, 127 (S.D.Tex.1990), *aff'd*, 936 F.2d 569 (5th Cir.1991). When the home forum has been chosen it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, the assumption is much less reasonable and courts are reluctant to assume that convenience motivated that choice. *Empresa*, 955 F.2d at 373 (stating that a court may be justifiably suspicious that a foreign national corporation may be attempting to "obtain the benefit of favorable law" in its selection of an American forum). The burden normally on a defendant to show the balance of the private interests is strongly in its favor applies with less force in this case. *Aguilar*, 806 F.Supp. at 143.

### 2. Balancing the interests

■ In determining whether a particular forum is appropriate, the court is required to balance the private interests of the litigants.... The private interests to be considered include: (i) relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling and the costs of obtaining attendance of willing, witnesses; (iii) possibility of view of premises, if a view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (v) enforceability of a judgment if one is obtained.

*Delgado*, 890 F.Supp. at 1366 (quoting *Gonzalez v. Naviera Neptuno, A.A.*, 832 F.2d 876, 878 (5th Cir.1987)). When balancing the private interest factors a district court must not give conclusive weight to any one factor. *Id.*

---

**25.** Rendon Declaration at pp. 3–5, ¶¶ 4–5, Docket Entry No. 17, Tab B.

## a. Relative ease of access to sources of proof

■ The plaintiff and its subrogor, RBK International (Mexico), are both citizens of Mexico. The bill of lading and the Mexico Liability Clause were negotiated in Malaysia.[26] The claim arose when a Mexican truck driven by a resident of Mexico on Mexican highways was hijacked, presumably by Mexicans. In their interrogatories both sides provide long lists of witnesses. Predictably, in a case where each side contemplates a fight over *forum non conveniens*, plaintiff primarily lists only witnesses in the United States and defendant primarily lists only witnesses in Mexico.[27] Having distilled the truly relevant witnesses from the parties' lists, the court concludes that four relevant witnesses reside in Texas, two in California, one in Malaysia, and twelve in Mexico.[28] Even assuming the Mexican and Malaysian witnesses could be brought to Texas for trial, language barriers may prevent an expeditious trial of this lawsuit in Texas. *See Fassi v. LJN Toys, Ltd.*, 753 F.Supp. 486, 489 (S.D.N.Y.1990), *aff'd*, 948 F.2d 1276 (2d Cir. 1991). The parties will also require testimony from experts who are familiar with Mexican commercial and transportation law.

Most of these witnesses will probably come from Mexico. The need for expert witnesses on Mexican law and custom could be eliminated or greatly reduced if the case were tried in Mexico. The court concludes that the ease of access to witnesses in Texas if the case were tried in Mexico weighs in favor of dismissal.

As with the witnesses, the documents relevant to this action are located in Texas, other parts of the United States, Mexico, and the Far East. Although much of the basic documentary evidence is already in the case file, significant portions are in Spanish and would require translation. *See Neo Sack*, 810 F.Supp. at 836. The court concludes that the issue of convenience for the witnesses and cost to the parties weighs in favor of dismissal.

## b. Availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining attendance of willing witnesses

Because many of the potential witnesses are located in Mexico, cost considerations dictate that trial in Mexico would be far more expedient. Transportation of the witnesses willing to testify in Texas would be expensive

---

**26.** Doran Deposition, Docket Entry No. 22, Exhibit A.

**27.** Plaintiff's Interrogatory Response lists 30 witnesses, 9 of whom are residents of Mexico, 1 of whom is a resident of Malaysia, and 20 of whom are residents of the United States (Plaintiff's Response to Defendant's Interrogatories, Exhibit B to Affidavit of C. Scott Kinzel, Docket Entry No. 7). In Plaintiff's Response to Defendant's Motion to Dismiss on Forum Non Conveniens plaintiff lists 15 additional individuals, all of whom are residents of the United States. Defendant lists 14 witnesses, 13 of whom are residents of Mexico and one of whom resides in Laredo, Texas (Defendant's Response to Plaintiff's Interrogatories, Exhibit A to Affidavit of C. Scott Kinzel, Docket Entry No. 7; Declaration of Alfredo Hidalgo at ¶ 2, Docket Entry No. 7).

**28.** Giving a generous reading to plaintiff's four basic theories of recovery, the evidence presented for this motion shows that Patty Cruz, Dan Compton, Juan Molina and John Doran of APL's Laredo office, Bob Fretinsky and Dan Pendleton of the Oakland, California, office, the Malaysian booking agent who negotiated the route, and the two Mexican representatives of Seguros may be necessary witnesses (See Plaintiff's Response to Defendant's Motion to Dismiss for Forum Non

Conveniens, Docket Entry No. 22; Doran Deposition at pp. 50, 51, 85, 86, 100, 101, 116–19, 188–91, 209, 238, etc., Docket Entry No. 22, Exhibit A.).

Using the same standard the court concludes that defendant points to ten witnesses, not including plaintiff's witnesses, who may be relevant under the negligence theories asserted by Seguros. These include the five employees of APL's Mexico City office who were responsible for contracting with the long-haul trucker in Mexico (Doran Deposition at pp. 116, 120, 135–37, 190, and 191, Docket Entry No. 22, Exhibit A; Defendant's Response to Plaintiff's Interrogatories, Kinzel Affidavit, Docket Entry No. 7, Exhibit A), the Mexican police officer in charge of the investigation of the hijacking (Defendant's Opposed Motion to Dismiss on Forum Non Conveniens, Docket Entry No. 17; Hidalgo Declaration, Docket Entry No. 17, Exhibit C), and the four employees of the Mexican trucker listed by defendant who are relevant to the negligent entrustment claim (Defendant's Opposed Motion, Docket Entry No. 17; Hidalgo Declaration, Docket Entry No. 17; Hidalgo Declaration, Docket Entry No. 17, Exhibit B; Defendant's Response to Plaintiff's Interrogatories, Kinzel Affidavit, Docket Entry No. 7, Exhibit A).

**1248**

and time consuming. Defendant's agreement to produce the American witnesses in Mexico alleviates the reverse cost problem. It also would be far less burdensome for the plaintiff to go to trial in its home country of Mexico.

Unwilling witnesses present even more of an obstacle to maintaining jurisdiction in the United States. Neither the parties nor the court can require the Mexican long-haul trucker, RBK International (Mexico), the Mexican police officials, and other Mexican residents to appear before this court for trial. As APL points out, the testimony of unwilling nonparty witnesses in Mexico can only be obtained to aid in a United States litigation through letters rogatory pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 231. This procedure poses difficulties in obtaining adequate deposition testimony and is expensive and time consuming. Conducting a substantial portion of a trial on deposition testimony also precludes the trier of fact from one of its most important roles, evaluating the credibility of witnesses. All of these problems can be avoided by trial in Mexico and by defendant's stipulation to produce its six witnesses noted above for trial in Mexico.

**c. Possibility of view of premises**

Although a view of the highway would likely provide little evidence of a theft which occurred two years ago, a view of the conditions of the highway could provide evidence relating to the negligence of selecting that particular route for the journey, a factor relevant to Seguros' claim that APL was negligent for not providing adequate security given conditions within Mexico. Litigation in Mexico would also provide access to the third-party Mexican trucker and a view of its trucks, trucking facilities, and security procedures, all factors relevant to the claim of negligent entrustment to a third party. The court concludes that this factor points slightly toward dismissal.

**d. Other practical problems that make trial of a case easy, expeditious, and inexpensive**

Because Mexican law applies to this dispute a trial in Texas would present major difficulties to counsel and to the court. Access to Mexican statutory and case law would be essential for determination of this case. These sources are not readily available to the court. *See Simcox*, 152 F.R.D. at 697. Because much of the testimony and many of the documents in this case will be presented to the court in Spanish, translators will be required. *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 729 (5th Cir.1990) ("The likelihood of needing translators for testimony increases the probable length and cost of trial," a factor pointing toward dismissal); *Delgado*, 890 F.Supp. at 1368. Courts have recognized that problems inherently arise when a court is forced to apply a law with which it is unfamiliar. *See Pain*, 637 F.2d at 793 n. 101. Accordingly, the court concludes that this factor weighs in favor of dismissal.

**e. Enforceability of a judgment if one is obtained**

APL has permanent offices in Mexico and transacts business in Mexico on a regular basis.[29] APL has stipulated that it will satisfy any final judgment rendered against it, and the court will condition any dismissal on this stipulation. The court concludes that this factor weighs for dismissal.

**3. *Conclusion***

The court concludes that the private interest factors weigh for dismissal of this case. With defendant's stipulations to produce the required witnesses and documentary evidence, the convenience of the parties points toward trial of this case in Mexico.

**D. Public Interest Factors**

■ If the district court concludes that the private interests do weigh in favor of the dismissal, it need not consider the public interest factors before dismissing on *forum non conveniens*. *Empresa*, 955 F.2d at 376.

**29.** The Declaration of Roberto Rendon states that the plaintiff may enforce a judgment gained in a Mexican court through an attachment of Defendant's Mexican assets pursuant to the Mexican Commercial Code (Rendon Declaration at p. 6, ¶ 7, Docket Entry No. 17, Tab B).

Although the court concludes that the private interest factors favor dismissal, it will evaluate the public interest factors because they also weigh for dismissal.

■ The central question a court must answer when considering the public interest is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it. *Neo Sack,* 810 F.Supp. at 838.

### 1. *Balancing the interests*

■ In *Piper Aircraft* the Supreme Court enumerated the specific relevant public interest factors to be considered by a district court.

> The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. *Accord, In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d at 1165–66 ("[E]ven when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained.").

### a. Administrative difficulties flowing from court congestion

■ The courts of this district are congested with cases having a greater nexus to Texas and to the United States than this dispute. The demands of a sizable criminal docket and the priority given to criminal cases leads to an inevitable backlog of civil cases in this district. Conservation of judicial resources is therefore an extremely important objective. This objective is better served by this court's dismissal of this case. It is not in the public interest to further burden this docket and the litigants with a case that has only a limited connection to and no precedential impact upon the local community. *See Cuevas v. Reading & Bates Corp.,* 577 F.Supp. 462, 476 (S.D.Tex.1983), *aff'd,* 770 F.2d 1371 (5th Cir.1985), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987).

### b. Localized controversies

The interests of the forum and the United States in this case are limited. This controversy involves a Mexican plaintiff alleging a loss in Mexico under Mexican law. Although some of the evidence relevant to this case is in the United States, since Mexican law applies, the decision would have no precedential impact in the United States. *See Neo Sack,* 810 F.Supp. at 839.

### c. Interest in having cases tried by a court that is "at home" with the law that must govern the action and

### d. The avoidance of unnecessary problems in conflict of laws or in the application of foreign law

Neither of the two bodies of law with which this court is "at home," Texas law and federal law, will apply in this case. The courts of Mexico have far more institutional competency in the application of their own law and access to sources of that law than does this court. The application of foreign law weighs heavily in favor of dismissal. Mexico also has a strong interest in resolving controversies regarding the safety of its public highways and in enforcing the rights of its own corporations when they have suffered a loss within Mexico.[30] All of these factors weigh heavily in favor of dismissal. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055; *Gonzalez,* 832 F.2d at 879; *Neo Sack,* 810 F.Supp. at 838; *Simcox,* 152 F.R.D. at 698.

---

**30.** *Cf. Sequihua v. Texaco, Inc.,* 847 F.Supp. 61, 64 (S.D.Tex.1994) (Ecuador has a local interest in having contamination of its air, land, and water resolved at home under public interest "at home" analysis.).

### e. The unfairness of burdening citizens in an unrelated forum with jury duty

Seguros has requested a jury trial in this case. When citizens of the United States serve as jurors they are compelled to forsake their chosen occupations for the duration of the trial. It would be an undue burden upon the citizens selected for jury duty to devote their time and attention to deciding this case rather than the many cases with a far more compelling relationship to local interests. Jury duty is a burden that ought not to be imposed upon the people of a community when the litigation has little relation to that community. It would be difficult for a Texas jury, with no familiarity with Mexican commercial and transportation practices or customs, to understand and apply Mexican law to resolve a case concerning a cargo loss in Mexico. *See Neo Sack*, 810 F.Supp. at 840. Thus, the interests of the community are furthered by this court's declining jurisdiction over the matter.

### 2. *Conclusion*

Each of the five public interest factors weighs for dismissal of this case. The burden on the court and the community to decide a claim arising under the laws of Mexico with significant evidence in Mexico and no local precedential value requires that this case be tried in Mexico.

### IV. *Order*

APL's Motion to Dismiss Based on Forum Non Conveniens (Docket Entry No. 17) is **GRANTED.**